# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SASHA R. JANSEN,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. C12-4024-LTS<br><br>**ORDER** |

_____

## *Introduction*

The plaintiff, Sasha R. Jansen, seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Jansen contends the administrative record ("AR") does not contain substantial evidence to support the Commissioner's decision that she is not disabled.

## *Background*

Jansen was born on November 8, 1991, and alleges that her disability began on that date. AR 122-28. She protectively filed her application for SSI on January 29, 2010, alleging disability due to hearing loss. AR 57, 122-28. Her claim was denied initially and on reconsideration. AR 49-62. Jansen then requested a hearing before an Administrative Law Judge ("ALJ"). AR 63-66. On October 11, 2011, ALJ Denzel Busick held a hearing via telephone during which Jansen and a vocational expert ("VE") testified. AR 28-48.

On November 7, 2011, the ALJ issued a decision finding Jansen not disabled since January 29, 2010. AR 8-16. Jansen sought review of this decision by the Appeals Council, which denied review on January 19, 2012. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

On March 16, 2012, Jansen filed a complaint in this court seeking review of the ALJ's decision. On April 10, 2012, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to then-Chief United States Magistrate Judge Paul A. Zoss for final disposition and entry of judgment. On June 8, 2012, the case was reassigned to me. The parties have briefed the issues and the matter is now fully submitted.

## *Summary of Evidence*

I have reviewed the entire administrative record and find the following evidence relevant to Jansen's arguments:

Jansen was born with a hearing impairment. AR 34, 154. In high school, her teachers communicated with her via a microphone and loudspeaker system. AR 33. She has never been employed at the level of substantial gainful activity ("SGA"). AR 11. In 2010, she worked for about two months as a cashier at a fast food restaurant. AR 35-36. She testified that she quit that job because another employee was teasing her and making jokes about her hearing impairment. AR 36. In 2011, she worked on an assembly line, sorting birth control containers. AR 36-37. She testified that she was hired as a temporary employee and was laid off after about one month of employment. AR 37.

In her function report, Jansen stated that her hearing loss affects her ability to talk, as she cannot always hear herself. AR 158. It also affects her ability to follow verbal instructions because it is difficult for her to hear and understand them. AR 158, 160.

In addition, she stated that her hearing loss affects her ability to hear, complete tasks, concentrate, understand and get along with others. AR 158.

Emily Gross, an audiologist practicing in Spencer, Iowa, evaluated Jansen in November 2008. AR 207. She found that Jansen had "severe sensorineural high frequency hearing loss, bilateral in nature." *Id*. Gross noted that when using her hearing aids, Jansen's speech scores were only around 50%, a result she called "troubling." *Id*. She also noted, however, that Jansen was being fit with newer hearing aids and stated: "I am optimistic that with a proper fitting those speech scores would be improved." *Id*.

On April 8, 2009, Jansen was fitted with new Resound Dot 20 hearing aids at Worthington Hearing Aid Service in Worthington, Minnesota. AR 153. Gross evaluated Jansen again in June 2010. She found that Jansen had "mild low frequency hearing loss sloping to a severe mid and high frequency loss AU." AR 209. She stated that Jansen's hearing loss is sensorineural in nature and that Jansen's "speech discrimination is 70% AD and 80% AS." *Id*. Gross also noted that Jansen's previous testing had shown "better hearing in the mid and high frequencies of approximately 10 dB AU." *Id*. She stated that "[t]his type of hearing loss tends to be progressive in most patients I deal with and appears to be the case with [Jansen]." *Id*. She also stated: "While we have no idea how quickly her hearing loss will change it is almost certain that is [sic] will continue to decrease and because it is sensorineural, it will never improve." *Id*. Finally, she stated that while Jansen has "relatively new hearing aids," she will still "have difficulties hearing in most listening situations due to the nature and severity of her loss and understanding scores." *Id*.

On October 10, 2011, Gross wrote a report summarizing her prior evaluations of Jansen. She stated that the new hearing aids Jansen received in 2009 "proved to be a much better fit for her hearing loss and aided speech testing went from 50% with her old

hearing aids to 90% with her new hearing aids." AR 212. She noted, however, that this testing occurred "in a quiet environment with little to no noise present." *Id.* Gross then wrote:

> People with this same type of hearing loss often describe it as hearing but not understanding. [Jansen] can hearing [sic] the low frequency sounds with little to no difficulty. However, the higher pitched sounds are very difficult for her to hear. As a result, speech often times sounds mushy or mumbled. Simply not clear. This is not as much of a problem if the speech is in a quiet environment and you are facing her directly, but in a noisy environment or one where the speaker is not directly in front of her, [Jansen] will continue to have difficulty with speech clarity, even when wearing the hearing aids.
>
> In the future, depending on the type of employment [Jansen] obtains, she can potentially have extreme difficulties hearing and understanding speech. Her hearing loss has decreased slightly in the three years since I've started with her and one can simply assume that the hearing will continue to decline as she ages. This reduction will more than likely make future communication more difficult as well.

*Id.*

Jansen was evaluated by another audiologist, Tracy Sullivan, in 2009 while being fitted for her new hearing aids. On March 3, 2010, Sullivan wrote a report stating that with the new hearing aids, "[Jansen's] hearing is greatly improved and should do well in most situations." AR 193. Sullivan stated that Jansen "may experience some difficulty hearing in situations where she is trying to listen in a great deal of background noise." *Id.* Thus, while Jansen "will do well in most situations while wearing her hearing aids, it cannot be expected of her to hear 100% of the time when she is [sic] a noisy environment." *Id.*

Trisha Witmer, a Speech & Language Pathologist, evaluated Jansen on October 6, 2011. AR 210-11. Witmer found that Jansen had language skills, both expressive and receptive, that fall within the low average range for an individual of her age when tested

in a quiet, one-on-one setting. AR 211. Witmer also noted in an environment with background noise, it would be difficult for Jansen to pick up on subtle differences in speech that can change the meaning of the information conveyed. *Id.* As such, she recommended that directions or information be given to Jansen "in an environment with as little background noise as possible," and/or in written form. *Id.*

> At the hearing, the ALJ asked the VE a hypothetical question:
>
> Let's go ahead and assume we have a hypothetical person who could work maybe up to the medium level. Picks up 50 pounds occasionally and 25 frequently. Sit six hours out of an eight-hour workday. Stand and walk a combined six hours. No other physical limitations. We get into limitations in the area of communications. The person has some documented difficulty in full enunciation of all works [sic]. Not serious, but some difficulty. And, they have documented hearing loss. Their doctor indicates that would have to avoid any kind of noisy environment and would work best where they would have infrequent contact with other people, which would include infrequent contact with the public, infrequent contact with coworkers, and actually no more than necessary contact with supervisors. It would have to be a quiet environment and it would have to be when supervisors are giving them instructions, they would need to be facing the supervisor. They would need to be looking at the supervisor in order to discern the instructions.

AR 44-45. The VE testified that such an individual could perform "a number of jobs," including housekeeper, garment sorter and shipping and receiving clerk. AR 45-46. He further testified that these positions exist in significant numbers in Iowa and in the national economy. *Id.*

> The ALJ then asked another hypothetical question:
>
> Now, assume I add some additional factors. We have got a person who is only about 20-years-old. They did have a high school diploma, but it sounds that some of that was in assisted education. Sometimes it is referred to as special education. So, they would not be appropriate for a job that requires lots of reading and writing. But, having that additional information, would that change your opinion on the ability to perform any of these jobs?

5

AR 46. The VE stated that this additional information would not affect the first two jobs (housekeeper and garment sorter). *Id.* However, he testified that the position of shipping and receiving clerk does require the ability to read and write at a basic level. *Id.* Finally, the VE testified that he heard nothing else in the testimony that was not taken into account in the two hypotheticals. *Id.*

### *Summary of ALJ's Decision*

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 29, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairment: sensorineural hearing loss (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except claimant must avoid any kind of a noisy environment and infrequent contact with other people, to include infrequent contact with the public, coworkers and no more than necessary contact with supervisors. It would have to be a quiet environment and when supervisors are giving instructions, she would need to be facing their supervisor in order to discern the instructions.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 8, 1991 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 29, 2010, the date the application was filed (20 CFR 416.920(g)).

AR 11-16.

In determining Jansen's residual functional capacity ("RFC"), the ALJ conducted a credibility analysis based on the factors in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). He found that Jansen's impairment was not as severe as alleged. Among other things, the ALJ stated that while Jansen has found it difficult to work, her employment ended for reasons "other than an inability to hear and/or communicate." AR 13. He also stated that the evidence from Jansen's audiologists and pathologist offers "no support for a finding of disability." AR 14. Instead, according to the ALJ, that evidence shows only that Jansen "would need to have a quiet environment and when supervisors are giving/explaining instructions, she would need to be facing their supervisor in order to discern the instructions more easily." *Id.*

The ALJ also found that Jansen's life activities show an ability to hear and/or communicate with others. *Id.* For example, "[s]he watches television, goes to movies, hangs out with friends and family, and attends Youth Group." *Id.* The ALJ noted that Jansen does not claim to have difficulty following written instructions and is not claiming to suffer from exertional limitations, pain, mental health issues or other health issues of any kind (apart from hearing loss). AR 13-14. The ALJ also observed

that during the hearing, Jansen "exhibited no problems hearing or understanding questioning by her attorney, the judge or the vocational expert, even though the hearing was conducted telephonically and not in person." AR 14.

The ALJ found that his RFC assessment "is supported by [Jansen's] activities of daily living, testimony received at hearing, speech and language evaluation summary and the audiograms/reports contained in the medical evidence of record." *Id.* He then found, based on his RFC assessment and the VE's testimony, that Jansen "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 16. As such, he determined that Jansen is not "disabled" within the meaning of the Social Security Act. *Id.*

## *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's

work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also

that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *The Substantial Evidence Standard*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that

detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

*Discussion*

After careful review of the entire record, and in light of the standard of review described above, I find that there is substantial evidence in the record to support the Commissioner's finding that Jansen is not "disabled" within the meaning of the Act. Frankly, it is not even a close call. And, unfortunately, Jansen's extremely-abbreviated brief does nothing to suggest otherwise.[1] Indeed, she does little more than put her own spin on the undisputed evidence in the record.

For example, Jansen claims the ALJ erred in finding that she quit her prior jobs for reasons other than her inability to hear and/or communicate. Doc. No. 12 at 3. However, the ALJ's findings are based on Jansen's own testimony. With regard to her fast-food job, she testified that she quit because she was being harassed by a co-worker. AR 36. While the harassment was apparently based on Jansen's hearing impairment, this raises a personnel issue, not an issue as to Jansen's ability to perform the work. Likewise, Jansen testified that her assembly line job ended because it was a temporary position and she was laid off when she was no longer needed. AR 37. She indicated that her hearing impairment caused some difficulties, but those difficulties did not prevent her from performing the work and were not the reason for her departure. *Id.* The ALJ did not err in accepting the truth of Jansen's own testimony.

The ALJ's RFC finding, which expressly takes into account the concerns about background noise that are identified in the medical evidence, is supported by substantial evidence in the record. The audiologists and pathologist who evaluated Jansen did not

---

[1] The argument portion of Jansen's brief (Doc. No. 12) covers just one-and-a-half pages and consists of five short bullet points. No cases, statutes or regulations are cited. Jansen did not file a reply brief to address the Commissioner's arguments. Here, given the state of the evidentiary record, it is safe to say that a longer brief would not have affected the outcome. Nonetheless, in light of the standard of review that applies to judicial review of the Commissioner's decisions, plaintiffs would be well-advised to provide the court with developed arguments.

indicate that her hearing impairment prevents her from performing any work. Instead, they noted that she will have difficulty hearing and understanding in a noisy environment. AR 193, 210-212. The ALJ included this limitation, along with a requirement that Jansen face her supervisors when receiving instructions, in his RFC assessment and his hypothetical questions to the VE. Based on the VE's testimony, there is substantial evidence in the record to support the ALJ's finding that there are jobs that exist in significant numbers in the national economy that Jansen can perform.

The record also supports the ALJ's assessment of Jansen's credibility. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities, duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski*, 739 F.2d at 1322). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 894 (8th Cir. 2000)). However, lack of objective medical evidence cannot be the sole reason for discounting a claimant's subjective complaints. *Mouser*, 545 F.3d at 638. An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2009). The ALJ does not need to discuss each *Polaski* factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Here, the ALJ undertook an appropriate analysis of the *Polaski* factors in weighing Jansen's credibility. AR 12-14. He considered Jansen's work history, her

14

daily activities, her lack of any complaints of pain or exertional limitations and the objective medical evidence in finding that Jansen's allegations as to the limiting effects of her condition are not credible to the extent they are inconsistent with the ALJ's assessment of Jansen's RFC. Substantial evidence supports the ALJ's conclusion.

Finally, while Jansen has not raised an issue as to whether her impairments meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, I agree with the ALJ's finding that they do not. AR 11-12. The ALJ considered Section 2.00 (Special Senses and Speech) and found that the record contains no "valid treating or examining physician opinion as to listing level severity." *Id*. I have reviewed that entire section, with particular attention to Listings 2.09 and 2.10. The ALJ is correct that there is no evidence supporting a finding that Jansen's impairments meet or medically equal any of the listed impairments.

*Conclusion*

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Jansen was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ must be **affirmed** and judgment will be entered in favor of the Commissioner and against Jansen.

**IT IS SO ORDERED.**

**DATED** this 8th day of January, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA